**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLORADO**

Case No.:  1:19-cv-00973

JOSH CARROLL,

  Plaintiff,

v.

THE TOWN OF EATON POLICE DEPARTMENT,
THE TOWN OF EATON, a Colorado Municipal Corporation

  Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

COMES NOW Plaintiff, Josh Carroll("Plaintiff"), by and through his legal counsel, Elkus & Sisson, P.C., and hereby submits his Complaint and Jury Demand.

## I.  PARTIES AND VENUE

1.  The Plaintiff is an individual who resides at 354 Red Bud Court, Eaton, CO 80615.

2.  The Defendant, the Town of Eaton Police Department, is located at 224 1st Street, Eaton, CO 80615.

3.  The Defendant, Town of Eaton, is a Colorado Municipal Corporation located at 223 1st Street, Eaton, CO 80615.

## II.   JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States and 42 U.S.C. §1983.  Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.  Jurisdiction supporting Plaintiff's claim for attorney's fees is conferred by 42 U.S.C. § 1988.

5.      Venue in the United States District Court for the District of Colorado is proper in that the action complained of took place in the State of Colorado, Town of Eaton, and all the parties, upon information and belief, are residents of the state.

## III.   GENERAL ALLEGATIONS

6.      On January 10, 2017, the Plaintiff was hired as a Town of Eaton Police Officer.

7.      The Plaintiff held the position as a law enforcement officer with the Town of Eaton until his termination in September 2017.

8.      In 2017, the Plaintiff and his wife were expecting the birth of their first child.

9.      On September 16, 2017, at approximately 2:22 a.m., the Plaintiff contacted Chief Mueller to advise him that his wife had called and stated that she was in labor.

10.     At that time Plaintiff was on shift, which was not ending until 7:00 a.m.

11.     At all relevant times, and on September 15, 2017, the Plaintiff's shift was from 7:00 p.m. to 7:00 a.m.

12.     When the Plaintiff contacted Chief Muller, the Chief became upset.  Chief Mueller stated that he was disappointed in the Plaintiff's lack of judgement because the Plaintiff did not provide advance notice that his wife would be in labor.  Chief Mueller promptly ended the conversation.

13.     Shortly thereafter the Plaintiff received a phone call from Sergeant Sturch. Sergeant Sturch inquired about the status of the pregnancy.  The Plaintiff advised Sergeant Sturch that his wife was in labor and that he needed to go to the hospital.  Not allowing the Plaintiff to leave work, Sergeant Sturch wanted to know "how far along" the Plaintiff's wife was in her labor. The Plaintiff did not know because he was unable to get in touch with her again.

14.     Subsequent to Plaintiff's conversation with Sergeant Sturch, the Plaintiff was in contact with his wife who informed Plaintiff that the Doula was on the way to the Carroll's residence and she had contacted their midwife.  The midwife advised that Mrs. Carroll could labor at home as long as she could before going into the hospital but this was her decision to make.

15.     The Plaintiff promptly contacted Sergeant Sturch and provided the update. Sergeant Sturch instructed the Plaintiff to contact him if he needed to leave before the end of his shift so that the Sergeant could cover.

16.     After the Plaintiff's conversation with Sergeant Sturch he received another phone call from Chief Mueller.  During that phone call Chief Mueller was making allegations that the Plaintiff purportedly told another Sergeant, Sergeant Suter, that the Chief was "blowing Carroll off" when trying to discuss the birth of Plaintiff's son.  The Plaintiff emphatically denied making any such statement.  Again, Chief Mueller stated that he was disappointed in the Plaintiff and thought the Plaintiff was lying.

17.     The Chief advised the Plaintiff that he could to go his residence and be with his wife but still needed to be available to handle calls if they come in.  Chief Muller then instructed the Plaintiff that "if Mr. Carroll's son begins to stick his head out of Mrs. Carroll's vagina before the shift was over to call Sergeant Sturch to come in and cover the rest of [Plaintiff's] shift."

18.     Chief Muller finished the call by stating that his was going to have a meeting on Monday September 18, 2017 at Eaton Police Department between himself, the Plaintiff, Sergeant Sturch and Sergeant Suter.  Chief Muller stated that he was again disappointed with the Plaintiff and that he was considering terminating Plaintiff's employment with the Town of Eaton which was dependent on how the September 18, 2017 meeting went.

19.     Based on the conversation with Chief Mueller, and the tone by which the Chief was admonishing the Plaintiff during these interactions, the Plaintiff was very concerned that he was going to be terminated.  As such, and despite the fact that his wife was in labor, the Plaintiff stayed for the remainder of his scheduled shift, *i.e.*, until approximately 7:00 a.m. on September 16, 2017.

20.     At approximately 2:00 a.m. on September 16, 2017, Mrs. Carroll phoned the Plaintiff and asked whether he was going to make it for the delivery of their child.  Mrs. Carroll was expressing to the Plaintiff her concern that he would not be present for the birth of their child. The election for the Plaintiff to stay at his job to finish out his shift on September 16th imposed a great amount of stress upon Plaintiff's relationship with his wife.

21.     On September 16, 2017, Mrs. Carroll gave birth to her son.

22.     On September 18, 2017, the Plaintiff reported to the Eaton Police Department. During the meeting the Plaintiff was alleged to have made false statements to the Chief.  The Plaintiff denied making false statements.

23.     During the September 18, 2017 meeting, Chief Mueller also made the following statements to the Plaintiff: (1) "you are coming across with a shit attitude, just like you did with me on the phone, just like you done with him [gesturing to Sergeant Sturch] and with Sergeant Suter. You are immature Josh. You act like a little kid. This is an adults only Police Department,

okay?" ; and (2) "you have done nothing to prevent the nonsense that's going on here over this past weekend. Nothing, at all. You created this." Also during the meeting, Chief Mueller made an accusation that the Plaintiff never notified the Chief about the status of Mrs. Carroll's pregnancy.

24.     Contrary to Chief Mueller's claim was the following:

a) A verbal notification to Chief Mueller of the September 16, 2017 due date in early February 2017 at the Eaton Police Department;

b) A verbal notification to Chief Mueller of the September 16, 2017 due date the first week of June, 2017 at the Eaton Police Department;

c) A verbal notification of the September 16, 2017 due date during a closed door conversation with Chief Mueller in his office at the Eaton Police Department on July 31, 2017;

d) A verbal update to Sgt. Suter, Plaintiff's direct supervisor at the time, during the weekend of September 1-3, 2017;

e) A verbal update to Sgt. Suter during the weekend of September 8-10, 2017 informing him that the contractions were starting to be more consistent and labor could start any day. At this time the Plaintiff was instructed by Sgt. Suter to call him if Mrs. Carroll went into labor and he was on duty, and if he was not on duty, he instructed the Plaintiff to call Chief Muller;

f) On September 15, 2017, a verbal update to Sgt. Suter stating that Mrs. Carroll was having contractions and it was likely that she would be giving birth that evening.

25.     On September 19, 2017, Chief Mueller met with the Town of Eaton's attorney. After that meeting, Chief Mueller determined that the Plaintiff did not meet the standard to continue as an employee with the Town of Eaton and it was decided that the Plaintiff would be offered the opportunity to resign.  Said another way, Chief Mueller was going to terminate the Plaintiff unless he resigned from the Town of Eaton Police Department.

26.     The Plaintiff was constructively discharged from the Town of Eaton on September 19, 2017.

27.     On September 19, 2017, a document was signed and executed by Sergeant Sturch and Chief Mueller.  The document, which purports to support the alleged misconduct by the Plaintiff, was allegedly dated September 18, 2017; however, as previously noted herein, the document was actually signed by the Chief and Plaintiff's supervisor the very date that the Plaintiff was asked to resign.

28.     The Eaton Police Department has a robust internal affairs policy that identifies not just the process, but also the rights of the officer who is the subject of the investigation.

29.     Under the Eaton Police Department internal affairs policy it states that "[i]f there is a serious complaint, allegation of misconduct, or other incident that requires a complete investigation, the process will be initiated as an internal affairs investigation."

30.     The Eaton Police Department initiated an internal investigation regarding the Plaintiff based on the events set forth herein.

31.     Under the Eaton Police Department's internal affairs policy, and specifically the "Rights of the Subject", "[i]nterviews of the subject will be conducted at the convenience of the department.  As much as possible, the interview will be scheduled at a reasonable time, preferably while the subject is on duty, unless there is some compelling reason to the contrary."

32.     At no time was the Plaintiff interviewed by internal affairs.

33.     At no time was the Plaintiff interviewed by internal affairs prior to Chief Mueller making the determination that Plaintiff should be terminated.

34.     Being that Chief Mueller was a witness to the events which occurred on September 18, 2017, and upon information and belief, Chief Mueller never requested and/or utilized an uninterested third party to conduct the internal investigation in this matter.  Instead, Chief Mueller acted not only as a witness to all of the at-issue events, but he also served as the ultimate decision maker regarding whether the Plaintiff should be investigated and what disciplinary action the Plaintiff should receive.  In short, Chief Mueller sought to immediately fire the Plaintiff despite a process and procedure that is to be utilized to ensure that all facts are discovered for the Department's determination as well as protection for the subject of the investigation.

35.     Based on the events as alleged herein, the Plaintiff exhausted his administrative remedies by filing a Charge of Discrimination with the Colorado Civil Rights Division and the Equal Opportunity Commission.

36.     Both the Civil Rights Division and Equal Opportunity Commission provided rights to sue letters, which this matter is timely filed under both administrative agencies.

37.     During the administrative determination by the Civil Rights Commission, the Defendant alleged that the Plaintiff failed to perform his job duties satisfactorily.  This was a transparent attempt to paint the Plaintiff as a subpar employee, however, the Defendant's explanation lacks credibility and is pretext for the discriminatory animus.

38.     During Plaintiff's tenure with the Eaton Police Department the Plaintiff had no significant disciplinary history evidencing any unsatisfactory work performances.  In fact, the contrary was true.  The Plaintiff had a history of strong work performance and only had one verbal warning.

39.     Despite a lack of disciplinary history, it was discovered for the first time by the Plaintiff during the Civil Rights Division investigation that the Defendant placed in Plaintiff's personnel file a disciplinary action dated September 3, 2017. This disciplinary action was never made known to the Plaintiff prior to Defendant's Position Statement dated December 20, 2017.

40.     Notably absent from the September 3, 2017 discipline was a signature of the Plaintiff, his supervisor and the Chief of Police.

41.     Upon information and belief, the September 3, 2017 discipline was manufactured by the Defendant after the fact as a means to show or evidence a history of poor work performance as committed by the Plaintiff.

42.     Upon information and belief, the Plaintiff was viewed by the Eaton Police Department as an unsatisfactory employee only after the Plaintiff sought to leave work for the birth of his child.

**FIRST CLAIM FOR RELIEF**
(42 U.S.C. §1983 – Due Process Violation)

43.     The Plaintiff incorporates all the allegations above as set forth herein.

44.     One's freedom of intimate association, which is based on the Due Process Clause of the Fourteenth Amendment, recognizes as "an intrinsic element of personal liberty" the right of an individual to develop deeply personal attachments with other individuals.

45.     Associations entitled to this unique form of constitutional protection are characterized by such attributes as "relative smallness," "a high degree of selectivity," and "seclusion from others in critical aspects of the relationship." The Due Process Clause is construed

to protect one's right to marry, to procreate, to associate with family members, to rear children, and to become involved in consensual sexual relationships.

46.     An association claim under the 14th Amendment also has been referred to as "familial association."

47.     As set forth above, the Defendant has taken a course of action to interfere with Plaintiff's relationship with his family.  Specifically, when Defendant was aware that the Plaintiff's spouse was in labor Chief Muller threatened the Plaintiff.  The threat was that the Plaintiff can go to his wife and be there for the delivery of his child but come Monday, September 18, 2017 the Chief was going to talk about the Plaintiff's employment ending with the Department.   Said another way, Chief Mueller was giving the Plaintiff the choice of picking his family or picking his job.  If picking the former, the Plaintiff's employment will end.

48.     As set forth above, at approximately 2:00 a.m. on September 16, 2017, Mrs. Carroll phoned the Plaintiff and asked whether he was going to make it for the delivery of their child. Mrs. Carroll was expressing to the Plaintiff her concern that he would not be present for the birth of their child.  The election for the Plaintiff to stay at his job to finish out his shift on September 16th imposed a great amount of stress upon Plaintiff's relationship with his wife.

49.     Notably, prior to the birth of Plaintiff's child in 2017, the most significant discipline the Plaintiff received from the Town of Eaton was a written reprimand.  A mere three (3) days after Plaintiff elected to see the birth of his son the Defendants advised the Plaintiff that he must resign or face termination.  This adverse action was the culmination of the threat Chief Mueller made on September 15, 2017.

50.    At all times relevant, Chief Mueller had final policy making authority for the Eaton Police Department when he constructively discharged the Plaintiff from his employ.

51.    Based on the facts set forth herein, the Defendants intended to violate Plaintiff's Due Process Rights.  As a result, the Plaintiff has been damaged, which damages shall be proven at trial.

## SECOND CLAIM FOR RELIEF
(42 U.S.C. § 2000e-2(a)(1) Title VII)

52.    The Plaintiff incorporates all the allegations above as set forth herein.

53.    Under Title VII it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

54.    Title VII, by its terms, confers standing to sue on persons who claim they were discharged because of their gender.

55.    Here, there are facts that overwhelmingly indicate that Plaintiff was terminated because his spouse was pregnant.  The timeline of events evidences this unlawful action.

56.    Notably, despite Defendants' claim that the Plaintiff was a poor employee, the Plaintiff was never placed on any performance improvement plan nor received any disciplinary action that was more severe than a written reprimand.  The most severe discipline occurred on September 19, 2017, which was three (3) days after Plaintiff's wife gave birth to their son.

57.    Three (3) days after attending the birth of his son the Plaintiff was faced with a choice of resignation or termination.  That Hobson's Choice was the culmination of a chain of

events that started with the Plaintiff notifying the Chief that the Plaintiff's wife was going into labor, and the Chief becoming angry about that.

58.     Upon information and belief, and at all relevant times, the Town of Eaton employed fifteen (15) or more employees.

59.     Based on the facts set forth herein, the Defendants treated Plaintiff differently because he was married to a pregnant woman and based on that relationship the Defendant terminated the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment for the Plaintiff and against the Defendants and award to the Plaintiff:

a.  injunctive relief requiring the Defendants to remedy all adverse employment actions taken against the Plaintiff by the Defendants, including, but not limited to, an order requiring the Defendants to cease and desist from any future retaliation against Plaintiff;

b.  damages for all injuries suffered by the Plaintiff, including, but not limited to, damages for loss of income, loss of employment and retirement benefits, loss of professional and career opportunities, injury to reputation and emotional distress;

c.  punitive damages;

d.  prejudgment and post judgment interest;

e.  costs and reasonable attorney fees; and

f.  such other and further relief as this Court deems just and proper.

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY OF ALL CLAIMS AND ISSUES SO TRIABLE.

Respectfully submitted this 2nd day of April, 2019.


ELKUS & SISSON, P.C.

/s/ Reid J. Elkus
Reid J. Elkus,
Lucas Lorenz
Attorneys for Plaintiff
ELKUS & SISSON, P.C.
501 S. Cherry Street, Suite #920
Denver, Colorado 80246
(303)567-7981
(303)431-3753 (fax)
relkus@elkusandsisson.com
llorenz@elkusandsisson.com